That is 23-7328. Mr. Wick and Mr. Cooper, we will hear from you in five minutes. May it please the court, I'm Robert Wick for the defendants. At the class certification stage, the defendants made an extensive showing that the plaintiff's expert evidence is a blunt instrument that can't tell the difference between an injured and an uninjured class member because it generates false positives, it masks the existence of unharmed class members, and it can't distinguish between the effects of the alleged conspiracy and the effects of the economic upheaval created by the financial crisis. Mr. Wick, we have heard conflicts and debates and disagreements about the appropriateness of experts since the beginning of the court, and the requirements for Rule 23-F review are very, very rare. Can you tell me what is specifically about this case that you think makes it so rare? I think that review is warranted for two reasons, Your Honor. First, this case presents an enormously important and recurring legal question of whether the Supreme Court's decision in Tyson Foods essentially overturns this court's seminal ruling in Teamsters and in In re IPO that district courts have to resolve expert disputes at the Rule 23 stage that bear on Rule 23 issues. The district court here read Tyson to, in effect, overturn Teamsters and IPO and sharply cut back the role of district courts in scrutinizing expert evidence. Whether Tyson Foods does or doesn't have that revolutionary effect on this court's precedent is an important and recurring legal question that warrants Rule 23-F regardless of anything else. Secondly, review is warranted here because, at a minimum, the district court's order is questionable, and the certification of a $12 billion treble damages class creates enormous coercive pressure on the defendants to settle the case regardless of the merits of the case. Okay, but when does pressure equal death now? Well, what the advisory committee notes on Rule 23-F say is that the standard is a practical one. It's not a formal one, and the test is whether, as a practical matter, the certification order is likely to end the litigation, not to end the defendants, to end the litigation. And that standard is easily met here because, in the entire history of the Second Circuit, the plaintiffs have been unable to cite a single $12 billion class action that has gone to final judgment and then the class certification order. Yeah, but aren't you the one that has to prove that it'll be the death knell, not them? We appeal to the court's practical judgment on that, and that's what the advisory committee states the court should use. So you don't have a case that says a number, right? I don't have a case that says above a certain threshold, you win, and below a certain threshold, you lose. If history and experience in this court is any guide- Okay, so maybe you could ask the question a different way. What do you think you pled, suggesting that we should be worried about it being the death knell of the litigation? We've argued that the certification of a $12 billion class creates an obvious coercive pressure on the defendants to settle, and that history and experience teach that the chances of- Okay, but you didn't provide details about assets, revenues, profits, anything about the ability or inclination to continue litigating, right? At this stage, is it your burden? Well, Your Honor, we appeal to the court's practical judgment because that's the only thing we can do. We don't have a crystal ball, we can't predict the future, and experience teaches us that when these cases go to- when a $12 billion class gets certified, it never comes back to this court. Returning to the important legal question here, this court said in Teamsters that district courts have to resolve, under a preponderance of the evidence standard, expert disputes that bear on Rule 23 questions. The expert dispute here is over whether the plaintiff's expert evidence is a blunt instrument that can or cannot tell the difference between an injured class member and an uninjured class member. That is a Rule 23 question for the court to decide. Because if our experts are correct that the plaintiff's evidence can't tell the difference between an injured and an uninjured class member, well then, common evidence cannot tell us who was injured and who wasn't. We need individual evidence for that. That means injury is an individual question, not a common question. That is a Rule 23 question for the court. It's not a jury question. It is no answer for the plaintiff to say, as they do, that if the jury ultimately agrees with the defendants, that the plaintiff's expert evidence is a blunt instrument that can't tell an injured class member from an uninjured class member, then the jury can simply decide that no one was injured and reject the claims of the entire class as a unit. It would be grossly unfair and unjust, in a violation of Rule 23, to send the jury the unitary question of whether everyone was injured or whether no one was injured, unless and until this court decides as a threshold, or as the district court decides as a threshold matter, that injury really... I'm going to let you finish your sentence and then see if my colleagues have any questions. Thank you, Your Honor. I'll just finish that one sentence and then stop. Unless and until the district court decides that injury really is a common question and not an individual one, and the district court refused to resolve expert disputes that dictate the answer to that question, unless the court has further questions, I thank the court for its attention. Thank you. And then Mr. Cooper. May it please the court, David Cooper for the plaintiff's respondents. Defendant's counsel says that the expert reports here were a blunt instrument, but Judge Furman said the opposite. What he said was that the disputes that they raise raise reasonable disputes about which economists can and do differ. That's appendix page 11. So their petition comes down to the idea that Judge Furman had to take the additional step of deciding which experts are correct. That is incorrect. Instead, the judge apparently decided that he used the Daubert test to determine whether the testimony is admissible, and if that is so, then they're both admissible, then there's no determination whatsoever as to the issue on which their opinions bear. So it's correct. Once you get past Daubert, you do not decide, and Judge Furman did not decide, which expert was ultimately correct about these very detailed methodological disputes. But what he did do was then say, can the issues be decided on a class-wide basis, based on all the common evidence and based on whatever individual evidence that defendants raise? And what he found is that the issues could be decided on a class-wide basis. And there are three reasons why their argument to the contrary does not suffice for a 23-F review. The first is that they simply didn't make this argument below, that Judge Furman should in fact decide which expert is correct. I'd call this Court's attention to pages 5 to 6 of their own reply brief in support of the 23-F, where they try to rebut this argument and they list the- Suppose the judges were not required to decide which was correct. Would you say that ruling on Daubert is enough to constitute a rigorous analysis? Not by itself, but with- So first, there's a Daubert analysis to determine whether or not the experts are in fact reasonable and whether or not their opinions are admissible. Then there is an additional question of, if we do credit this evidence, can the issues be decided on a class-wide basis? And that's where Judge Furman did say that these issues, regardless of what individualized issues that defendants were raising, that the jury could decide this on a class-wide basis. And the reason why it does not make sense to go farther, to take that additional step of saying this person was correct or incorrect, is that that won't bind the jury anyway. That's the Mazzai case from this Court. The judge's findings on class certification do not bind the jury. So whether or not the judge thinks that our expert is more persuasive than their expert, theirs is more than ours, the jury is going to see the exact same evidence. And so it does not affect whether or not the issues can be decided on a class-wide basis. And so it's completely irrelevant to the question of predominance. Turning to the death knell, I mean, we know that doesn't necessarily mean the bankruptcy of a litigant or the death of the client or the lawyer, for that matter. But surely it involves the size and manageability of the issue. What we have here is weekly fixings of rates from 2008 to 2015. Is that it? Yes. And so that's like 375 weeks for how many issues? And then you've got the other 30% of these remarketing agents and determinations whether their fixings were at a lower rate. Did you seriously dispute that this could involve hundreds of millions of dollars in attorney's fees? I can't predict the amount of attorney's fees. I will grant that they are going to be very significant. Unless it settles. So the question is whether this is the kind of case that lends itself to a compelled settlement because of the pressure of having this kind of liability on the balance sheet, having this on the balance sheet of the insurance company if there is insurance, the running of the litigation costs. Are these legitimate considerations for the death knell analysis? I think they can be considerations. But ultimately what they would have to show is that there was such inordinate pressure to settle that they could not effectively, reasonably, practically bring this to final judgment. And given the size of these defendants, I think we have to consider it based on the size of the defendants. Certainly for many defendants this amount would make it virtually impossible to go to trial. For these defendants it doesn't. And when they say that it never goes to final judgment, that's not correct. Credit Suisse in the FX case brought a multibillion dollar case to a final judgment. It's a choice. They have a choice whether to bring this to final judgment. If they choose not to, that's not for this court to then grant interlocutory review to allow them to make that choice. But this is not a situation where they effectively have no choice because they can't pay it. And the last point I'll just make is that the district court did not suggest in any way that Tyson overturned Teamsters and IPO. Those were cases that were applying the basic presumption. Tyson did not suggest it was overturning Halliburton. In fact, I see my time is up, but I'll just finish this sentence if I can. Tyson is directly on point here and binding, and that's why additionally there is no question. And that proposition that is determinative and binding is what? That if, in fact, there's a dispute among experts, the judge does not decide whether the expert is correct. And that is especially true when the dispute over the experts can itself be decided on a class-wide basis. Thank you. We will take this case. We will take this question.